**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
-----------------------------------------------------------------X
**AHMED SHQEIRAT, MOHAMED IBRAHIM,**
**DIDMAR FAJA, OMAR SHAHIN,**
**MAHMOUD SULAIMAN, and MARWAN SADEDDIN,**

                                Plaintiffs,           <u>FIRST AMENDED</u>
                                                  <u>COMPLAINT</u>

              v.                            Civil Action No. 0:07-cv-01513
                                              (ADM) (AJB)
**U.S. AIRWAYS GROUP, INC.,**
**U.S. AIRWAYS, INC., JOHN DOES,**
**and METROPOLITAN AIRPORTS COMMISSION,**

                                      Defendants.
-----------------------------------------------------------------X

       This is a civil rights complaint for declaratory, injunctive, and monetary relief.

Plaintiffs, by their attorney, allege as follows:


## PRELIMINARY STATEMENT

1.      On November 20, 2006, Defendants unlawfully removed Plaintiffs Ahmed Shqeirat,

      Mohamed Ibrahim, Didmar Faja, Omar Shahin, Mahmoud Sulaiman, and Marwan

      Sadeddin from U.S. Airways Flight 300 for which they possessed a valid ticket and

      prevented them from flying on any other U.S. Airways flights, on the basis of their

      perceived race, religion, color, ethnicity, alienage, ancestry, and/or national origin.

2.      Defendants had no legitimate non-discriminatory reason to justify their treatment of

      Plaintiffs; rather, Defendants based their actions on Plaintiffs' race, religion, color,

      ethnicity, alienage, ancestry, and/or national origin.  Because of Defendants'

      discriminatory acts, Plaintiffs were denied the right to make and enforce a contract,

      subjected to unlawful discrimination by a recipient of federal financial assistance,

denied equal treatment in a place of public accommodation, and falsely arrested and detained by law enforcement officers.

3.    Defendants, with the intent to cause harm to Plaintiffs' reputation, maliciously, recklessly and without regard to their privacy and integrity, defamed and made false reports against Plaintiffs to justify their illegal action.

4.    Federal law expressly provides that an "air carrier or foreign air carrier may not subject a person in air transportation to discrimination on the basis of race, religion, color, national origin, religion, sex, or ancestry."  49 U.S.C. § 40127(a).

5.    The Department of Transportation ("DOT") responded to incidents of discrimination by warning several major airlines, including U.S. Airways that it had "seen several reports of airlines apparently removing passengers from flights because the passengers appeared to be Middle Eastern and/or Muslim."

6.    The DOT cautioned airlines "not to target or otherwise discriminate against passengers based on their race, religion, color, national or ethnic origin, [or] religion, or based on passengers' names or modes of dress that could be indicative of such classification."

7.    Notwithstanding the forceful statements of the DOT and clear mandates of federal law, passengers perceived to be Muslim and/or Middle Eastern have continued to be subjected to discriminatory treatment by airlines.

8.    Plaintiffs bring this action under 42 U.S.C. § 1981, 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d), 49 U.S.C. § 41705, the Minnesota Human Rights Act and state tort claims.  Plaintiffs seek declaratory relief,

compensatory and punitive damages, and injunctive relief to prevent future unlawful discrimination by Defendants.

9.      Since the horrific events of September 11, 2001 our nation has witnessed an alarming rise in incidents of discrimination against Arabs and/or Muslims and against persons perceived to be Arab and/or Muslim.  This civil rights lawsuit is brought to ensure that the promise of equal treatment embodied in federal and state anti-discrimination laws does not become a meaningless guarantee for persons perceived to be Muslim and/or Arab and/or Middle Eastern.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has pendant and supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.  Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 1343(a)(4), 2201, and 2202.

11.     The events giving rise to the claims alleged in this Complaint arose at the Minneapolis-St. Paul International Airport.  Defendant U.S. Airways maintains a business presence at the Minneapolis-St. Paul International Airport in Minneapolis, Minnesota.  Venue therefore lies in this Court pursuant to 28 U.S.C. § 1391(b)(2) and Minn. R. Civ. P. 82.

## PARTIES

12.     Plaintiff Ahmed Shqeirat, age 42, is a male resident of the State of Arizona.  Plaintiff Shqeirat is a Muslim of Jordanian-Arab origin.

13.    Plaintiff Mohamed Ibrahim, age 31, is a male resident of the State of California. Plaintiff Ibrahim is a Muslim of Egyptian-Arab origin.

14.    Plaintiff Didmar Faja, age 26, is a male resident of the State of Arizona.  Plaintiff Faja is a Muslim of Albanian origin.

15.    Plaintiff Omar Shahin, age 45, is a male resident of the State of Arizona.  Plaintiff Shahin is a Muslim of Jordanian-Arab origin.

16.    Plaintiff Mahmoud Sulaiman, age 49, is a male resident of the State of Arizona. Plaintiff Sulaiman is a Muslim of Egyptian-Arab origin.

17.    Plaintiff Marwan Sadeddin, age 55, is a male resident of the State of Arizona. Plaintiff Sadeddin is a Muslim of Syrian-Arab origin.

18.    Defendants U.S. Airways Group, Inc. and U.S. Airways, Inc. (hereinafter "U.S. Airways") are incorporated in Delaware with headquarters at 111 West Rio Salade Parkway, Tempe, Arizona, 85281.  U.S. Airways maintains a business presence at the Minneapolis-St. Paul International Airport in Minneapolis, Minnesota.

19.    Defendant Capt. John Howard Wood was the captain of U.S. Airways Flight 300 on November 20, 2006.  At all time relevant to the events mentioned herein, Capt. Wood was an agent and/or employee of U.S. Airways and was acting within the scope of his employment.  Upon information and belief, Capt. Wood made the decision to have Plaintiffs removed from Flight 300.

20.    Defendant Flight Attendants and Desk Agents "John Does" were at all times relevant to the events mentioned herein employees and/or agents of Defendant U.S. Airways and were acting within the scope of their employment on U.S. Airways Flight 300 on

November 20, 2006 and on subsequent U.S. Airways flights on November 20-21, 2006.

21.     Possible Defendants "John Does" were individuals who on November 20, 2006 may have made false reports against Plaintiffs solely with the intent to discriminate against them on the basis of their race, religion, ethnicity and national origin.

22.     Plaintiffs are unaware of the true names and capacities of Defendants sued herein as John Does and therefore sue said Defendants by such fictitious names.  Plaintiffs will seek leave to amend this Complaint to allege true names, capacities, and circumstances supporting the liability of said Defendants at such time as Plaintiffs ascertain the same.

23.     Defendant Metropolitan Airports Commission is responsible for administering the Minneapolis-St. Paul Airport Police Department.  Its headquarters is located at 6040 28th Avenue South, Minneapolis, Minnesota, 55450.


**FACTS**

24.      On November 20, 2006, after attending the North American Conference of Imams in Minneapolis, Minnesota, Plaintiffs arrived in the Minneapolis-St. Paul International Airport with the intention of traveling on a U.S. Airways flight to Phoenix, Arizona.

25.     On October 29, 2006, Plaintiffs formed a contract with Defendant U.S. Airways when they used their credit card to secure plane tickets for a round trip from Phoenix to Minneapolis.

26.     Plaintiff Omar Shahin is a Gold member of U.S. Airways and forty-eight hours before departure U.S. Airways sent him an email notifying him that they had upgraded him to first-class.

27.     The Plaintiffs arrived at Minneapolis-St. Paul International Airport scheduled to depart Minneapolis on November 20, 2006 at 5:45 p.m.

28.     At the U.S. Airways ticketing desk, Plaintiff Shahin, the passenger with a first-class ticket, asked a U.S. Airways agent whether his companion traveler Marwan Sadeddin, a blind man, could be upgraded.

29.     Upon information and belief, the U.S. Airways agent told Plaintiff Shahin that he could upgrade two of his companions because as a Gold member he was entitled to such upgrades.

30.     Since there were no first-class seats available, the agent suggested that she issue two economy-class tickets for Plaintiff Shahin's companions Plaintiffs Marwan Sadeddin and Mahmoud Sulaiman while placing them on the waiting list for first-class.

31.     After they passed through security without incident, the Plaintiffs proceeded to the departure gate C9 at around 3:45 p.m.

32.     At the gate, the Plaintiffs chatted with each other and joked in Arabic and English.

33.     At no time did Plaintiffs discuss politics or refer to Saddam Hussein or President Bush.

34.     On or about 4:20 p.m. in time for the Maghreb (early evening/dusk Muslim prayer), Plaintiffs decided to pray together.

35.     Plaintiffs Faja, Sadeddin and Shqeirat decided not to pray and instead watched over everyone's belongings.

36.     As they were seated, Plaintiffs Faja, Sadeddin and Shqeirat noticed an older couple who was sitting behind them and purposely turning around to watch the other Plaintiffs as they prayed together.

37.     Upon information and belief, the gentleman in the couple facing Plaintiffs at gate C9 picked up his cellular phone and made a phone call while watching the Plaintiffs pray.

38.     Upon information and belief, this gentleman moved to a corner near gate C9.  While observing the Plaintiffs discreetly, he kept talking into his cellular phone.

39.     On or about 4:40 p.m. the Plaintiffs finished praying.

40.     On or about 4:55 p.m., Defendant U.S. Airways started calling the passengers to board.

41.     Plaintiff Shahin boarded first because he was in first-class.

42.     Plaintiff Sadeddin, who is blind, entered the aircraft holding onto Plaintiff Mahmoud Sulaiman.  Plaintiff Sadeddin's cane had broken therefore it was safer for him to hold onto someone else's hand as he walked.

43.     Plaintiff Sadeddin sat at his pre-assigned seat in row 7 while Plaintiff Sulaiman sat at his pre-assigned seat in row 9.

44.     Plaintiff Sulaiman asked the person sitting in the aisle across from him whether he would be willing to exchange seats with Plaintiff Sadeddin since Plaintiff Sadeddin is blind and may need assistance from his friend during the flight.

45.     The passenger agreed and switched seats with Plaintiff Sadeddin who moved to row 9 across from Plaintiff Sulaiman.

46.     Plaintiff Sadeddin requested a seatbelt extension since the seatbelt did not fit him.

47.  Sitting in first-class, Plaintiff Shahin got up and walked towards Plaintiff Sadeddin in economy class and asked him if would like to have his seat.  Plaintiff Sadeddin thanked him and told him that he would stay in his seat.

48.  Plaintiff Shahin returned to his seat in first-class and requested a seatbelt extension since the seatbelt did not fit him.

49.  Upon information and belief, Plaintiff Shahin always requests a seatbelt extension when he travel with U.S. Airways.

50.  Plaintiffs Faja and Shqeirat were sitting together in seats 25 E and F.  Plaintiff Shqeirat fell asleep for about thirty minutes immediately after boarding.

51.  When Plaintiff Shqeirat awoke, he and Plaintiff Faja noticed a police vehicle had arrived next to the airplane.

52.  Plaintiffs Shqeirat and Faja watched as two police officers in uniform and one undercover police officer, summoned by Defendant U.S. Airways, boarded the plane, walked to the end of the plane, spoke with a Flight Attendant in the kitchen and then got off.

53.  Minutes later, two other officers in uniform and one undercover officer entered from the front of the plane, summoned by Defendant U.S. Airways, and walked to the kitchen towards the end of the aircraft.

54.  The officers approached the Plaintiffs and demanded they deplane one by one in front of all of the other passengers.

55.  Neither the police nor any representative/agent/employee of Defendant U.S. Airways told Plaintiffs why they were being removed from the plane.

56.     In a peaceful, respectful and cooperative manner, Plaintiffs obeyed the police officers' orders by getting off the aircraft.

57.     The Plaintiffs, very well-respected religious members of their community in Arizona, were horrified and humiliated as passengers on the plane looked at them as if they were criminals.

58.     Plaintiffs were lined up against the wall and facing the police officers on the ramp immediately outside of the airplane.  They were then ordered to turn around and face the wall and place their hands up so they could be searched and handcuffed.

59.     One officer asked Plaintiff Shqeirat whether Plaintiff Sadeddin was completely blind and Plaintiff Shqeirat affirmed that he was.

60.     Plaintiff Shqeirat asked the police officer what was going on to which the officer replied:  "I do not know.  This is the airline's call and not our call."

61.     The police officers ordered Plaintiffs to re-board the plane to identify their carry-on luggage in front of the entire plane full of passengers.

62.     Thereafter the police officers used sniffing dogs to search Plaintiffs and their belongings.  Meanwhile, the Plaintiffs were told to face the wall with their arms raised.  The Plaintiffs were held against their will.

63.     The Plaintiffs were thoroughly searched and their belongings were put in plastic bags and then taken away.

64.     Plaintiffs were held against their will for forty-five minutes in the jetway without knowing what was going on or being told what was going on.

65.     Plaintiff Shahin kept asking one of the officers if he could say something.  One officer told him to stop talking or otherwise he would be arrested.

66.     While on the jetway, Plaintiffs believed that they were in fact under arrest.  They were not free to leave and none of them were given Miranda Warnings.

67.     While handcuffed, Plaintiffs were escorted through the airport and transported in police cars to the Minneapolis Airport Police Precinct.

68.     The Plaintiffs, well-respected, religious leaders in their community, felt degraded, humiliated and dejected as they were led before airport patrons and passengers who looked at them as though they were criminals.

69.     Plaintiff Sadeddin is blind.  He needed to use his hands to find the side of the stairs so he could walk safely without assistance.

70.     Because he was handcuffed, Plaintiff Sadeddin experienced extreme fear of falling as he was forced to descend the stairs without holding onto anything.

71.     Plaintiff Sadeddin was terrified as it took him more than ten minutes to descend because he was struggling to find the next step beneath his feet to get to the ground of the airport.

72.     While being handcuffed Plaintiff Faja requested to have a lawyer but the officers refused his request.

73.     After arriving to the police precinct, Plaintiffs were detained without food or drink until 11:30 p.m. and were hungry, tired, exhausted and in fear.

74.     An officer asked Plaintiff Shahin in his cell whether his rights were read to him when he was handcuffed and escorted to the police station at the airport.  He answered no.

75.     Plaintiffs Shqeirat and Ibrahim were put together in one small room.  A police officer was sitting with the two Plaintiffs the entire time in order to ensure that they would not speak with one another.

76.     All the Plaintiffs waited in their cells for several hours.

77.     The F.B.I. interviewed each Plaintiff separately.

78.     The F.B.I. presented Plaintiff Shqeirat with a Miranda Warning and began asking him
        questions about his background including where he was from, his social security
        number, address and whether he did anything out of the ordinary at the airport.

79.     Plaintiff Shqeirat assured the F.B.I. he did not do anything out of the ordinary.

80.     The F.B.I. asked Plaintiff Shqeirat whether he moved from his seat.  He stated to
        them that he did not move from his seat and that he slept for about 30 minutes when
        he first boarded the plane.

81.     Plaintiff Shqeirat affirmed to the F.B.I. officers that all of the Plaintiffs were well-
        respected, active Imams in Arizona and were engaged in inter-faith dialogue with
        their communities and met regularly with police chiefs, F.B.I., and I.N.S. agents as
        well as the Governor of the state of Arizona.

82.     After fifteen minutes of questioning by the F.B.I., the police officers took Plaintiff
        Shqeirat to another cell where Plaintiff Faja was present.  They then moved him to a
        cell where Plaintiff Shahin later joined them.

83.     Two officers who identified themselves as members of the Secret Service for the
        protection of the President came and questioned Plaintiff Shqeirat.  They presented
        him with a Miranda Warning.

84.     The Secret Service asked him whether he liked the President of the United States.
        They also asked him whether he would like the President to be harmed to which he
        responded with an obvious no.

85.     When the Secret Service left, the police officers returned and escorted Plaintiff Shqeirat to a back door with his luggage and told him he was free to leave.

86.     An F.B.I. agent and police officer came to Plaintiff Shahin and asked him to read his Miranda Warning and sign it.

87.     The F.B.I. asked him about his background and inquired into his national origin, his citizenship and the school at which he taught in Jordan.  They also asked him about the conference he was attending in Minneapolis.

88.     The Secret Service asked Plaintiff Shahin whether he had discussed Saddam Hussein and Iraq while on the plane.

89.     They asked him if he had any intention of harming the U.S.  His answers were obviously no.  He was then told that he was free to leave.

90.     Plaintiff Faja went through the same procedure.  Plaintiff Faja is originally from Albania and this experience was terrifying to him since it reminded him of his life in Albania where some of his relatives were persecuted for expressing their religious beliefs during Albania's communist era.

91.     The F.B.I. asked Plaintiff Faja about himself, including his activities and the mosques to which he belonged.

92.     Plaintiff Faja was asked by the Secret Service whether he hated the U.S. President or wanted to harm him in any way or have him removed from his post.

93.     The F.B.I. questioned Plaintiff Sadeddin and asked him whether he was blind.  An U.S. Airways Flight Attendant had earlier informed the police officers that she believed that Plaintiff Sadeddin was faking his blindness.

94.     The F.B.I. read him his rights and asked him about his life, activities, where he was born, where he prayed, where he lived in the Middle East and when he got his citizenship.

95.     Then individuals identifying themselves as Secret Service agents asked Plaintiff Sadeddin whether he liked President Bush or wanted him harmed.  They also asked him about his views on U.S. foreign policy and Saddam Hussein.

96.     The F.B.I. and Secret Service repeated the same procedure with Plaintiffs Ibrahim and Sulaiman each time questioning them about their backgrounds and asking them whether they wanted to see the U.S. President harmed.

97.     After questioning was completed, the Plaintiffs were informed by the F.B.I. and the Secret Service that they did not pose any kind of security threat, were cleared of any wrongdoing and told that they were free to leave.

98.     After their release, the six Plaintiffs returned to the terminal for the purpose of requesting U.S. Airways to book them on the next available flight to Phoenix.

99.     Plaintiff Faja called U.S. Airways and the agent asked for the code on his ticket.

100.    As soon as he gave the code to the agent, the agent told him that U.S. Airways no longer permitted Plaintiffs to fly with them.

101.    Plaintiffs Faja and Shqeirat asked the F.B.I. agent whether they were on a "No Fly" list.  The F.B.I. agent assured them that they were clear and that there was no governmental restriction on them to fly, but that it was up to the Airline whether it was going to carry them or not.

102.   Plaintiff Shahin asked the U.S. Airways agent to speak with the F.B.I. agent who had cleared them.  The U.S. Airways agent refused to do so stating that the Plaintiffs were not welcome to fly with U.S. Airways.

103.   Plaintiff Shahin called the travel agent once again and informed her that he had Gold Member status with U.S. Airways.

104.   Upon information and belief, the agent repeated that the Plaintiffs could no longer fly with U.S. Airways.

105.    The Plaintiffs asked the F.B.I. agent to speak with U.S. Airways.  The F.B.I. agent made a phone call to U.S. Airways.   He spoke with the same representative for approximately twenty minutes.

106.   Upon information and belief, the F.B.I. agent told the Plaintiffs that he was sorry that U.S. Airways continued to refuse to board the Plaintiffs despite his assurances that they did not pose any kind of security threat.

107.   Upon information and belief, the F.B.I. agent told the Plaintiffs that U.S. Airways made it clear to him that they did not want the Plaintiffs flying with them.

108.   Unable to find a flight on the night of November 20, 2006, Plaintiffs were forced to call a friend who drove them for two hours to another friend's home.

109.   On or about 2:30 a.m., they arrived and could barely sleep.

110.   That evening, Plaintiffs began to hear media reports distorting the facts and falsely claiming that Plaintiffs had been praying on the flight; chanting "God is Great" in Arabic; and had refused U.S. Airways' request for them to deplane.

111.   That evening, based on statements made by U.S. Airways' employees, agents and representatives, Plaintiffs heard the media replaying false, egregious statements

claiming that the Plaintiffs had purchased one-way tickets, paid for their tickets in cash and were disruptive and uncooperative when asked to deplane the aircraft.

112.   On November 21, 2006 between 6 a.m. and 7 a.m., Plaintiff Shahin called U.S. Airways again and asked them to book tickets for a Phoenix-bound flight.

113.   On or about two hours later, U.S. Airways contacted Plaintiff Shqeirat and told him that U.S. Airways could not honor their request to fly with U.S. Airways.

114.   The U.S. Airways agent refused to book Plaintiffs on another airline.

115.   When Plaintiffs arrived back at Minneapolis-St. Paul International Airport under intense media scrutiny, U.S. Airways again refused to rebook Plaintiffs' tickets.

116.   Plaintiff Shahin gave the agent his credit card and asked her to rebook the ticket.

117.   The agent asked him to wait while she consulted with the U.S. Airways System Operations Control Manager on duty.

118.   Upon information and belief, the agent returned and told him that she was instructed not to sell Plaintiffs any tickets or to have them fly with their Airline.  She also demanded Plaintiff Shahin move away from the ticket counter.

119.   After extreme hardship in finding a flight back home, the Plaintiffs finally booked flights with Northwest Airlines to board a Phoenix-bound flight at 11:45 a.m.

120.   As a result of the events of November 20-21, 2006, Plaintiffs have endured fear, anxiety to fly, humiliation, embarrassment, mental pain, suffering, inconvenience, and financial injury, including lost business profits.

121.   Plaintiffs are upstanding leaders in their community.  As a result of Defendants' intentional discrimination and defamation, they have been subjected to emotional

distress, ridicule, name-calling, harassment and targeted by malicious statements imputing egregious actions to them.

122.     Defendants' actions were intentional, malicious, willful, wanton, and callous, and showed reckless disregard for Plaintiffs' civil and constitutional rights.


## CLAIMS FOR RELIEF

## COUNT I
## DISCRIMINATION UNDER 42 U.S.C. § 1981

123.     Plaintiffs repeat and re-allege paragraphs 1 through 122 as though fully set forth herein.

124.     On November 20, 2006, at all times relevant to the events described above, the pilot, flight crew, gate agents, and air marshals for U.S. Airways Flight 300 were employees, agents and/or representatives of U.S. Airways.

125.     On November 21, 2006, at all times relevant to the events described above, the pilot, flight crew, gate agents, and air marshals for U.S. Airways were employees, agents and/or representatives of U.S. Airways.

126.     The discriminatory practices described above were carried out:

(a) at the direction of and with the consent, encouragement, knowledge, and ratification of the Defendant  U.S. Airways;

(b) under Defendant U.S. Airways' authority, control, and supervision; and/or

(c) within the scope of its employees' employment.

127.     Defendant U.S. Airways is liable for the unlawful acts of its employees, agents and/or representatives directly and/or under the doctrine of *respondeat superior*.

128.    Defendant U.S. Airways engaged in intentional discrimination based on Plaintiffs' race, color, religion, ancestry, and/or national origin, and caused Plaintiffs to suffer deprivation of their right to make and enforce contracts.

129.    Defendant U.S. Airways' actions violated 42 U.S.C. § 1981.

130.    As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiffs suffered and will continue to suffer humiliation, anxiety to fly, shame, despair, embarrassment, depression, mental pain, anguish, injury to their reputations, and economic losses, all to Plaintiffs' damage in an amount to be proven at time of trial.

131.    As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff Shahin, a frequent traveler, has endured and will continue to endure economic losses and emotional stress due to the difficulty of finding an alternate airline route.

## COUNT II
## TITLE VI OF THE CIVIL RIGHTS ACT OF 1964
### (42 U.S.C. § 2000d)

132.    Plaintiffs repeat and re-allege paragraphs 1 through 131 as though fully set forth herein.

133.    Defendant U.S. Airways is the recipient of federal financial assistance.  Defendant engaged in intentional discrimination based on Plaintiffs' race, religion, color, and/or national origin.

134.    Defendant U.S. Airways' actions violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

135.    As a direct, foreseeable, and proximate result of said wrongful acts by Defendants Plaintiffs suffered and will continue to suffer humiliation, anxiety to fly, shame, despair, embarrassment, depression, mental pain, anguish, injury to their reputations, and economic losses, all to Plaintiffs' damage in an amount to be proven at time of trial.

136.    As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff Shahin, a frequent traveler, has endured and will continue to endure economic losses and emotional stress due to the difficulty of finding an alternate airline route.

### COUNT III
### 42 U.S.C. § 1983, FOURTH, SIXTH AND FOURTEENTH AMENDMENT
### AS TO U.S. AIRWAYS
### AND METROPOLITAN AIRPORTS COMMISSION

137.    Plaintiffs repeat and re-allege paragraphs 1 through 136 as though fully set forth herein.

138.    Defendants, Metropolitan Airports Commission Airport Police Department, a state actor, engaged in intentional discrimination against Plaintiffs based on their race, religion, color, or national origin and caused Plaintiffs to be deprived of their rights.

139.    On November 20, 2006, Plaintiffs were improperly denied access to a flight, subjected to false accusations and detained against their will.

140.    At all times relevant, the officers who committed the aforesaid unlawful acts were agents and/or employees of Defendant Metropolitan Airports Commission, acting within their scope and authority, under the color of state law, and were summoned to act under the authority of Defendant U.S. Airways.

141.    Defendant Metropolitan Airports Commission, acting under the color of state law, and through its employees, agents and/or representatives engaged in a course of action and behavior, rising to the level of a policy, custom, and condoned practice, which deprived Plaintiffs of the rights, privileges and immunities secured by the United States Constitution and by federal statute in violation of 42 U.S.C. § 1983.

142.    Defendant U.S. Airways, through its agents, employees, and/or representatives, was acting under the color of state law when Defendants Metropolitan Airports Commission, under the direction of U.S. Airways, deprived Plaintiffs of their rights, privileges, and immunities secured under the United States Constitution.

143.    Defendant U.S. Airways' offensive, discriminatory decision to deem Plaintiffs' behavior suspicious, requiring their immediate removal from Flight 300 and calling for assistance from the Defendant Metropolitan Airports Commission's police officers so that Plaintiffs could be placed under arrest amounted to conduct attributable to the state.

144.    As a result, Defendant U.S. Airways caused Plaintiffs to be stripped of their rights to equal protection guaranteed under the Fourteenth Amendment by clearly discriminating against Plaintiffs on the basis of their race, religion and/or national origin and caused Plaintiffs to be violated of their right to be free from unreasonable searches and seizures guaranteed under the Fourth Amendment.

145.    Defendants U.S. Airways and Metropolitan Airports Commission acted in concert to violate Plaintiffs' rights as guaranteed to them pursuant to and under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the

Fourth and Sixth Amendments to the United States Constitution, and  42 U.S.C. § 1983.

146.    Defendant Metropolitan Airports Commission unlawfully searched and seized Plaintiffs in violation of their Fourth Amendment right to be free from unreasonable searches and seizures.

147.    Defendant Metropolitan Airports Commission denied the Plaintiffs their right to an attorney and proceeded to interrogate them despite their specific requests for an attorney, thereby violating their Sixth Amendment right under the United States Constitution.

148.    As a direct, foreseeable, and proximate result of said wrongful acts by Defendants Metropolitan Airports Commission and U.S. Airways, Plaintiffs suffered and will continue to suffer humiliation, anxiety to fly, shame, despair, embarrassment, depression, mental pain, anguish, injury to their reputations, and economic losses, all to Plaintiffs' damage in an amount to be proven at time of trial.

149.    As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff Shahin, a frequent traveler, has endured and will continue to endure economic losses and emotional stress due to the difficulty of finding an alternate airline route.

## COUNT IV
## FAILURE TO TRAIN UNDER 42 U.S.C. § 1983

150.    Plaintiffs repeat and re-allege paragraphs 1 through 149 as though fully set forth herein.

151.    Defendant Metropolitan Airports Commission, acting under the color of state law, through its employees,  agents and/or representatives, intentionally and knowingly as

an act of discrimination based on race, religion, ethnicity and/or national origin, violated Plaintiffs' constitutional rights.

152. Out of deliberate indifference and/or unofficial custom and policy, Defendant failed to adequately train or supervise its police officers as to the discrimination laws and what constitutes unlawful discriminatory conduct.

153. As a result, Plaintiffs were detained without probable cause and ejected from U.S. Airways Flight 300 for reasons devoid of any legitimate, non-discriminatory security concern.

154. Defendant Metropolitan Airports Commission should have known, trained and instructed its employees, agents and/or representatives to be aware that the act of praying is a religious practice and not a security threat or a form of suspicious activity.

155. As a direct and proximate result of said acts, indifference, custom and policy established by Defendant Metropolitan Airports Commission, Plaintiffs have suffered and will continue to suffer humiliation, shame, despair, anxiety to flight, embarrassment, depression, mental pain, anguish, injury to their reputations, and economic losses, all to Plaintiffs' damage in an amount to be proven at time of trial.

156. As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff Shahin, a frequent traveler, has endured and will continue to endure economic losses and emotional stress due to the difficulty of finding an alternate airline route.

## COUNT V
## FALSE ARREST

157.   Plaintiffs repeat and re-allege paragraphs 1 though 156 as though fully set forth herein.

158.   On November 20, 2006, Defendant U.S. Airways removed Plaintiffs from U.S. Airways Flight 300, thereby intentionally depriving them of their freedom of movement.

159.   Plaintiffs did not consent to the arrest.

160.   Plaintiffs allege that Defendant U.S. Airways unlawfully had Plaintiffs handcuffed and arrested.

161.   Upon information and belief, no government or law enforcement agency or personnel requested that Plaintiffs be removed from U.S. Airways Flight 300.

162.   Upon information and belief, no government or law enforcement agency or personnel suggested that Plaintiffs posed a threat to safety or security.

163.   Plaintiffs' arrests were not based on any probable cause that they were preparing to commit or had committed any wrongdoing or criminal activity.

164.   Defendant U.S. Airways' acts and conduct were solely motivated by its intent to discriminate against Plaintiffs based on their race, color, religion, ethnicity and/or ancestry.

165.   Plaintiffs were handcuffed by Defendant Metropolitan Airports Commission's police officers who, in turn, relied upon the statements of Defendant U.S. Airways' employees, agents and/or representatives.  Defendant U.S. Airways was the cause of Plaintiffs' arrest.

166. As a direct, foreseeable, and proximate result of said wrongful acts by Defendant U.S. Airways and Defendant Metropolitan Airports Commission, Plaintiffs suffered and will continue to suffer humiliation, anxiety to fly, shame, despair, embarrassment, depression, mental pain, anguish, injury to their reputations, and economic losses, all to Plaintiffs' damage in an amount to be proven at time of trial.

167. As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff Shahin, a frequent traveler, has endured and will continue to endure economic losses and emotional stress due to the difficulty of finding an alternate airline route.

## COUNT VI
## AIR CARRIER ACCESS ACT
### (49 U.S.C. § 41705)

168. Plaintiffs repeat and re-allege paragraphs 1 through 167 as though fully set forth herein.

169. Defendant U.S. Airways is governed by 49 U.S.C. § 41705 which prohibits air carriers from discriminating against individuals with a physical and mental impairment.

170. Through the conduct of its agents, employees and/or representatives, Defendant U.S. Airways engaged in intentional discrimination based on Plaintiff Sadeddin's impairment by claiming that Plaintiff Sadeddin appeared to be faking his blindness.

171. As a direct and proximate result of Defendant U.S. Airways' conduct, Plaintiff Sadeddin was left struggling to descend the steps of the plane unassisted despite his request for aid.

172.   Through the conduct of its agents, employees and/or representatives, Defendant U.S. Airways intentionally removed Plaintiff Sadeddin from Flight 300, exposing him to extreme hardship and refused to assist him in traveling on subsequent U.S. Airways flights.

173.   As a direct result of acts alleged herein, Defendant U.S. Airways' actions violated Plaintiff Sadeddin's rights as guaranteed under 49 U.S.C. § 41705.

174.   As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff Sadeddin suffered and will continue to suffer fear, anxiety to fly, distress and mental anguish in an amount to be determined, all to Plaintiff's damage in an amount to be proven at time of trial.

## COUNT VII
## MINN. STAT. § 363A.11 subd. 1

175.   Plaintiffs repeat and re-allege paragraphs 1 through 174 as though fully set forth herein.

176.   U.S. Airways Flight 300, from which Plaintiffs were removed, and other U.S. Airways flights to which Plaintiffs were denied  admission, are places of public accommodation as defined in Minn. Stat. § 363A.11, subd. 1.

177.   On November 20 and November 21, 2006, Defendant U.S. Airways denied Plaintiffs access to U.S. Airways Flight 300 and subsequent U.S. Airways flights.

178.   Defendant U.S. Airways' actions were based on Plaintiffs' perceived race, color, religion, national origin, and/or ancestry.

179.   As a result of Defendant U.S. Airways' acts and conduct, Plaintiffs' guaranteed rights under Minn. Stat. § 363A.11, subd. 1 were violated.

180.　As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiffs suffered and will continue to suffer humiliation, anxiety to fly, shame, despair, embarrassment, depression, mental pain, anguish, injury to their reputations, and economic losses, all to Plaintiffs' damage in an amount to be proven at time of trial.

181.　As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff Shahin, a frequent traveler, has endured and will continue to endure economic losses and emotional stress due to the difficulty of finding an alternate airline route.

## COUNT VIII
## MINN. STAT. § 363A.17

182.　Plaintiffs repeat and re-allege paragraphs 1 through 181 as though fully set forth herein.

183.　Defendant U.S. Airways, through its agents, employees, and/or representatives, is engaged in a business and/or provision of service – namely, air transportation under Minn. Stat. § 363A.17.

184.　On November 20, 2006, Defendant U.S. Airways, through its agents, employees, and/or representatives, removed Plaintiffs from Flight 300 and denied Plaintiffs admission to any subsequent U.S. Airways flights on that day despite being cleared by the F.B.I and Secret Service.

185.　On November 21, 2006, Defendant U.S. Airways caused Plaintiffs to be denied air transportation services despite being cleared by the F.B.I and Secret Service.

186.　Defendant U.S. Airways' actions were motivated by unlawful discriminatory intent based on Plaintiffs' Muslim faith and/or Arab and/or Middle Eastern origins.

187.    As a result, Defendant U.S. Airways' actions violated Minn. Stat. § 363A.17.

188.    As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiffs suffered and will continue to suffer humiliation, anxiety to fly, shame, despair, embarrassment, depression, mental pain, anguish, injury to their reputations, and economic losses, all to Plaintiffs' damage in an amount to be proven at time of trial.

189.    As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff Shahin, a frequent traveler, has endured and will continue to endure economic losses and emotional stress due to the difficulty of finding an alternate airline route.

## COUNT IX
## VIOLATION OF CONSTITUTION OF
## THE STATE OF MINNESOTA

190.    Plaintiffs repeat and re-allege paragraphs 1 through 189 as though fully set forth herein.

191.    Defendant U.S. Airways violated Plaintiffs' rights and privileges as guaranteed to them under the Constitution of the State of Minnesota, Article I, Section 2.

192.    On November 20 and again on November 21, 2006, Defendant U.S. Airways engaged in intentional discrimination based on Plaintiffs' race, color, religion, ancestry, and/or national origin by purposely removing Plaintiffs from Flight 300 and denying them service on any subsequent U.S. Airways flights.

193.    As a direct, foreseeable, and proximate result of the aforementioned wrongful acts by Defendants, Plaintiffs suffered and will continue to suffer humiliation, anxiety to fly, shame, despair, embarrassment, depression, mental pain, anguish, injury to their

reputations, and economic losses, all to Plaintiffs' damage in an amount to be proven at time of trial.

194. As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff Shahin, a frequent traveler, has endured and will continue to endure economic losses and emotional stress due to the difficulty of finding an alternate airline route.

**COUNT X**
**MINN. STAT. § 13.355 subd. 1**
**AS TO METROPOLITAN AIRPORTS COMMISSION**

195. Plaintiffs repeat and re-allege paragraphs 1 through 194 as though fully set forth herein.

196. Defendant Metropolitan Airports Commission, through the actions of its employees, agents and/or representatives, caused Plaintiff Shahin's social security number to be unlawfully disclosed from a police report and published on the internet in violation of Minn. Stat. § 13.355 subd. 1.

197. An individual's social security number is defined as private data under Minn. Stat. § 13.355 subd. 1.

198. Defendant Metropolitan Airports Commission intentionally and/or recklessly failed to remove Plaintiff's social security number from the internet.

199. Pursuant to Minn. Stat. § 13.08 subd. 1, a responsible authority or government entity which violates Minn. Stat. § 13.355 subd. 1 is liable to the person for civil damages.

200. By virtue of the provisions of Minn. Stat. § 13.08 subd. 1, Defendant acted willfully, intentionally and in reckless disregard of the possible consequences of its conduct.

201.   As a direct, foreseeable, and proximate result of said wrongful acts by Defendant Metropolitan Airports Commission, Plaintiff continues and will continue to experience the fear that he may become the victim of identity theft and fraud and continues and will continue to suffer anguish, injury to his reputation and economic losses, all to Plaintiff's damage in an amount to be proven at time of trial.

## COUNT XI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

202.   Plaintiffs repeat and re-allege paragraphs 1 through 201 as though fully set forth herein.

203.   Defendant U.S. Airways acted intentionally and/or recklessly when it removed Plaintiffs from Flight 300 by summoning Defendant Metropolitan Airports Commission's police officers and by refusing to provide service to Plaintiffs on subsequent U.S. Airways flights on November 20 and November 21, 2006. Defendant U.S. Airways' conduct was extreme and outrageous.

204.   Plaintiffs did not engage in any behavior or make any comments that could justify Defendant U.S. Airways' decision to have them removed from Flight 300.

205.   Plaintiffs did not engage in any behavior or make any comments that could justify Defendant U.S. Airways' decision to deny Plaintiffs any subsequent transportation services on November 20 and November 21, 2006 after they had been cleared by the F.B.I. and Secret Service.

206.   Defendant U.S. Airways had no legitimate, non-discriminatory reason to believe that Plaintiffs posed a security risk.

207.   Defendant U.S. Airways discriminated against Plaintiffs, made false accusations against Plaintiffs, and had Plaintiffs willfully detained before hundreds of airport patrons.

208.   Defendant U.S. Airways' extreme and outrageous conduct caused Plaintiffs severe emotional distress and anxiety.

209.   As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiffs suffered and will continue to suffer humiliation, anxiety to fly, shame, despair, embarrassment, depression, mental pain, anguish, injury to their reputations, anxiety to fly and economic losses, all to Plaintiffs' damage in an amount to be proven at time of trial.

210.   As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff Shahin, a frequent traveler, has endured and will continue to endure economic losses and emotional stress due to the difficulty of finding an alternate airline route.

## COUNT XII
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

211.   Plaintiffs repeat and re-allege paragraphs 1 through 210 as though fully set forth herein.

212.   On November 20, 2006, Defendant U.S. Airways acted negligently and/or recklessly when it caused Plaintiffs to be kicked off Flight 300 and unlawfully detained.

213.   On November 20 and again on November 21, 2006, Defendant U.S. Airways acted negligently and/or recklessly when it refused to board Plaintiffs on any U.S. Airways flights despite the fact that no government or law enforcement agency or personnel

requested that Plaintiffs be denied transportation services after Plaintiffs were cleared by the F.B.I. and Secret Service.

214.   On November 20 and again on November 21, 2006 Defendant U.S. Airways acted negligently and/or recklessly when it refused to board Plaintiffs on Flight 300 and on subsequent U.S. Airways flights despite the fact that no government or law enforcement agency or personnel suggested that Plaintiffs posed a threat to safety or security.

215.   Defendant U.S. Airways acted willfully when it defamed Plaintiffs' reputations and disparaged their characters by making false, malicious statements about Plaintiffs' conduct on Flight 300.

216.   Defendant U.S. Airways should have known that their discriminatory treatment of Plaintiffs would create a reasonable risk of emotional and physical damages and did in fact cause emotional distress.

217.   As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiffs suffered and will continue to suffer humiliation, anxiety to fly, shame, despair, embarrassment, depression, mental pain, anguish, injury to their reputations, and economic losses, all to Plaintiffs' damage in an amount to be proven at time of trial.

218.   As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff Shahin, a frequent traveler, has endured and will continue to endure economic losses and emotional stress due to the difficulty of finding an alternate airline route.

## COUNT XIII
## DEFAMATION

219.    Plaintiffs repeat and re-allege paragraphs 1 through 218 as though fully set forth herein.

220.    Defendant U.S. Airways intentionally and/or recklessly made false and defamatory statements against Plaintiffs regarding its reasons for having Plaintiffs removed from U.S. Airways Flight 300.

221.    Defendant U.S. Airways knew or should have known in the exercise of reasonable care that its statements were false and defamatory.

222.    Defendant U.S. Airways falsely claimed that Plaintiffs were chanting "God is Great" in Arabic on the plane.

223.    Defendant U.S. Airways falsely claimed that Plaintiffs were suspiciously discussing President Bush and Iraq while on the plane.

224.    Defendant U.S. Airways falsely claimed that Plaintiffs refused its orders to deplane.

225.    Defendant U.S. Airways falsely claimed that Plaintiffs had purchased one-way tickets for travel on Flight 300 and paid for their tickets in cash.

226.    Defendant U.S. Airways falsely accused Plaintiff Sadeddin of faking his blindness.

227.    These false and egregious statements were made with the specific intent to justify Defendant U.S. Airways' discriminatory actions and cause Plaintiffs further humiliation, ridicule, contempt and hatred.

228.    As a result of statements made by Defendant U.S. Airways through its employees, agents, and/or representatives, Plaintiffs suffered injury to their reputations and were exposed to public hatred, contempt, and ridicule.

229.   As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiffs suffered and will continue to suffer humiliation, injury to their reputations, ridicule, anxiety, shame, despair, embarrassment, depression, mental pain, anguish, injury to their reputations and economic losses, all to Plaintiffs' damage in an amount to be proven at time of trial.

## COUNT XIV
## NEGLIGENCE

230.   Plaintiffs repeat and re-allege paragraphs 1 through 229 as though fully set forth herein.

231.   Defendant U.S. Airways, through the actions of its employees, agents and/or representatives, owed Plaintiffs a duty as a common carrier.

232.   Defendant U.S. Airways breached its duty when it summoned Defendant Metropolitan Airports Commission's police officers to board Flight 300 to escort Plaintiffs off the plane and arrest them solely on the basis of their race, color, religion, ancestry, and/ or national origin.

233.   Upon information and belief, no government or law enforcement agency or personnel requested that Plaintiffs be removed from U.S. Airways Flight 300, nor did any government or law enforcement agency or personnel suggest that Plaintiffs posed a threat to safety or security.

234.   Upon information and belief, no government or law enforcement agency or personnel requested that Plaintiffs be denied transportation services on subsequent U.S. Airways flights on November 20 and on November 21, 2006 after Plaintiffs were cleared by the F.B.I. and the Secret Service.

235.   Plaintiffs did not engage in any behavior or make any comments that could justify Defendant U.S. Airways' decision to have them removed from Flight 300.

236.   Plaintiffs did not engage in any behavior or make any comments that could justify Defendant U.S. Airways' decision to deny Plaintiffs any further transportation services on November 20 and again on November 21, 2006 after they had been cleared by the F.B.I and the Secret Service.

237.   Defendant U.S. Airways breached its duty to Plaintiffs when it ejected them from Flight 300 and refused to board them on subsequent U.S. Airways flights on November 20 and November 21, 2006 without any non-discriminatory reason to conclude that Plaintiffs posed a security risk.

238.   It was reasonably foreseeable that Defendant U.S. Airways' breach of its duty to Plaintiffs would cause injury to Plaintiffs.

239.   As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiffs suffered and will continue to suffer humiliation, anxiety to fly, shame, despair, embarrassment, depression, mental pain, anguish, injury to their reputations and economic losses, all to Plaintiffs' damage in an amount to be proven at time of trial.

240.   As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff Shahin, a frequent traveler, has endured and will continue to endure economic losses and emotional stress due to the difficulty of finding an alternate airline route.

**COUNT XV**
**FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE**
**AS TO U.S. AIRWAYS**

241. Plaintiffs repeat and re-allege paragraphs 1 through 240 as though fully set forth herein.

242. Defendant U.S. Airways is responsible for the training, instruction, supervision, and discipline of Defendant U.S. Airways' agents, employees, and/or representatives who were at all times relevant acting within the scope of their employment.

243. Upon information and belief, Defendant U.S. Airways provided grossly inadequate training, instruction, supervision, and discipline to its agents, employees, and/or representatives.

244. Defendant U.S. Airways should have known, trained and instructed its employees, agents and/or representatives to be aware that the act of praying is a religious practice and not a security threat or a form of suspicious activity.

245. U.S. Airways' inadequate training, supervision, and discipline of its employees, agents and/or representatives subjected Plaintiffs to intentional discrimination on the basis of their race, ethnicity, religion and/or national origin.

246. Defendant U.S. Airways' employees, agents and/or representatives' acts of intentional discrimination caused Plaintiffs to be unlawfully removed from Flight 300 and to be denied service on any subsequent U.S. Airways flights.

247. As a consequence of Defendant U.S. Airways' failure to train, supervise, and discipline its employees, agents and/or representatives, Plaintiffs suffered and will continue to suffer humiliation, anxiety to fly, shame, despair, embarrassment,

34

depression, mental pain, anguish, injury to their reputations and economic losses, all to Plaintiffs' damage in an amount to be proven at time of trial.

248.    As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff Shahin, a frequent traveler, has endured and will continue to endure economic losses and emotional stress due to the difficulty of finding an alternate airline route.

## COUNT XVI
## CONSPIRACY TO DISCRIMINATE

249.    Plaintiffs repeat and re-allege paragraphs 1 through 248 as though fully set forth herein.

250.    Upon information and belief, Defendant U.S. Airways, through the actions of its employees, agents and/or representatives, conspired against Plaintiffs by undertaking a course of conduct to achieve the removal of Plaintiffs from U.S. Airways Flight 300 and to prevent them from flying on any subsequent U.S. Airways flights on November 20 and on November 21, 2006.

251.    The actions of Defendant U.S. Airways employees, agents and/or representatives violated Minn. Stat. § 363A.14 which prohibits individuals from aiding and abetting in the commission of unlawful discrimination under the Minnesota Human Rights Act.

252.    Defendant U.S. Airways' employees, agents, and/or representatives' conduct included fabricating events as well as providing misleading accounts of the events that occurred on Flight 300.

253.   Defendant U.S. Airways secured Plaintiffs' unlawful removal from U.S. Airways Flight 300 followed by their arrest solely on the basis of Plaintiffs' race, color, religion, ancestry, and/or national origin.

254.   As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiffs suffered and will continue to suffer humiliation, anxiety to fly, shame, despair, embarrassment, depression, mental pain, anguish, injury to their reputations, and economic losses, all to Plaintiffs' damage in an amount to be proven at time of trial.

255.   As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff Shahin, a frequent traveler, has endured and will continue to endure economic losses and emotional stress due to the difficulty of finding an alternate airline route.

**COUNT XVII**
**INVASION OF PRIVACY**
**AS TO  METROPOLITAN AIRPORTS COMMISSION**

256.   Plaintiffs repeat and re-allege paragraphs 1 through 255 as though fully set forth herein.

257.   Defendant Metropolitan Airports Commission, through the actions of its employees, agents and/or representatives, caused the invasion of Plaintiff Shahin's privacy.

258.   Defendant Metropolitan Airports Commission's police report containing Plaintiff Shahin's social security number was found disseminated on the internet.

259.   The dissemination of Plaintiff's social security number on the internet constituted the publication of a private fact.

260.   The conduct of Defendant Metropolitan Airports Commission was highly offensive to Plaintiff Shahin.

261.   As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff is experiencing and will continue to experience the fear of becoming a victim of identity theft and fraud and suffer anguish, injury to his reputation and economic losses, all to Plaintiff's damage in an amount to be proven at time of trial.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)   Declare that the actions of Defendants described above constituted discrimination on the basis of race, religion, color, ethnicity, alienage, ancestry, and/or national origin in violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000d, the Fourteenth Amendment under the U.S. Constitution, 42 U.S.C. § 1983, 49 U.S.C. § 41705, the Constitution of the State of Minnesota and the Minnesota Human Rights Act;

(b)   Enter a permanent injunction directing Defendants to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 2000d, 42 U.S.C. § 1983, and the Minnesota Human Rights Act, § 363A.29;

(c)   Award Plaintiffs compensatory damages in an amount to be determined at trial to compensate them for being deprived of their right to travel as passengers in air transportation regardless of their perceived race, color, national origin, religion, ethnicity, and/or ancestry, including damages for fear, mental pain, inconvenience, humiliation, embarrassment, emotional distress, financial injury, including lost

business profits as provided under 42 U.S.C. § 1981, 42 U.S.C. § 2000d, 42 U.S.C. § 1983, 49 U.S.C. § 41705, and the Minnesota Human Rights Act, § 363A.29;

(d)     Award Plaintiffs punitive or exemplary damages against Defendants under the provisions of 42 U.S.C. § 1981, 42 U.S.C. §2000d, 49 U.S.C. § 41705, Minn. Stat. § 13.08 subd. 1, and Minnesota Human Rights Act, § 363A.29;

(e)     Award Plaintiffs prejudgment interest as provided under Minn. Stat. § 549.09, subd. 1(a);

(f)     Award Plaintiffs reasonable attorneys' fees and the costs incurred in this action pursuant to but not limited to 42 U.S.C. § 1988 and Minn. Stat. § 363A.33 subd. 7;

(g)     Award Plaintiffs compensatory and punitive damages against Defendants under the common law tort claims of defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, failure to train, supervise and discipline, conspiracy, false arrest, and invasion of privacy as provided under Minn. Stat. § 549.20; and

(h)     Award Plaintiffs such other relief as the Court deems just and proper.

Respectfully submitted,

_____/ss/_____

Omar T. Mohammedi (OM7234NY)
Law Firm of Omar T. Mohammedi, LLC
233 Broadway, Suite 801
Woolworth Building
New York,  NY 10279
(212) 725-3846

Dated:  March 23, 2007
New York, New York